LEROY B. PEASE *vs.* E. CHARLES FRANCIS.

PROVIDENCE—MAY 29, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Bills and Notes. Pledges. Contracts.*

A. owed the Woonsocket National Bank $5,000 on a note of April 4, 1892, secured by a pledge of 150 shares of stock of Woonsocket Reporter Co.; a note for $1,000 dated April 4, 1893, with pledge of 150 shares of said

stock; a note for $700, dated June 27, 1893, with the same pledge; a note for $375, one for $450, and one for $725, these last three notes not being secured by an express pledge. A. owned real estate which he sold for $5,000 over incumbrances. On the sale, A. claimed that he made an agreement with B., cashier of the bank, that the proceeds should go to pay the $5,000 note, thereby releasing the shares held as collateral for it. On suit based upon breach of this agreement by B. in applying the payment to the smaller notes, leaving only a balance of $1,350 to be applied to the $5,000 note, whereby the stock was still held in pledge and loss occurred through inability to sell the stock so pledged:—

*Held*, that B. could not make such an agreement except as an officer of the bank, and if the contract was made in his official capacity the remedy was against the bank and not against B.

*Held*, further, that, if B. "volunteered" to make the arrangement, he was, to that extent, the agent of A., and not responsible if the bank would not do what A. wanted.

(2) *Contracts. Ratification. Duress.*

A., after receiving a statement of the application of the $5,000, showing a payment on that note of $1,350, signed a note of April 3, 1894, for $3,600, upon demand by the bank for payment, all the stock being still left in pledge, and received the $5,000 note, the others having been previously returned to him. A. paid interest on this last note for two years without objection. A. claimed that he was forced to do this by threats of B. to foreclose a mortgage on personal property:—

*Held*, that A. ratified and adopted what was done by B.

*Held*, further, that, in so doing, A. was acting under neither duress nor coercion.

ASSUMPSIT for breach of contract. Heard on petition of defendant for new trial, and petition granted.

(1)    STINESS, C. J.   The evidence shows that in August, 1893, the plaintiff owned real estate in Woonsocket, which he sold for $5,000 over incumbrances. At that time he owed to the Woonsocket National Bank $5,000 on a note of April 4th, 1892, secured by pledge of one hundred and fifty shares of stock of Woonsocket Reporter Company. He also owed a note for $1,000, dated April 4th, 1893, with pledge of one hundred and fifty shares of said stock; a note for $700, dated June 27th, 1893, with the same pledge; a note for $375, one for $450, and a note for $725, these last three notes not being secured by an express pledge. On the sale of the real estate the plaintiff claims that he made an agreement with the defendant, the acting cashier of the bank, that the pro-

ceeds of the sale should go to pay the $5,000 note, thereby releasing the shares held as collateral for it.

This action is based upon a breach of that agreement by the defendant in applying the payment to the smaller notes, leaving only a balance of $1,350 to be applied to the $5,000 note, whereby the stock was still held in pledge and loss occurred from inability to sell the stock so pledged.

The evidence was contradictory, the plaintiff testifying to the contract as stated and the defendant denying it.

Assuming, as we must from the verdict, that the jury found that such a contract was made, the question arises whether the defendant is liable for the breach of it.

We think it is clear that he is not liable.

The defendant could not make an agreement affecting the collateral or the notes except as an officer of the bank. If he made the contract in question in his official capacity as cashier, it was the contract of the bánk, and the remedy is against the bank and not against him personally.

The plaintiff must have understood that he was dealing with the bank, for he knew that the bank held the note and collateral, and the bank alone could release them. He was dealing with the bank through its authorized agent, the cashier.

The plaintiff claims that the defendant had been his adviser. Still the plaintiff must have known that the defendant could make no contract touching the interest and affairs of the bank except in his official capacity. If the trifling matters of collecting rebate of interest and insurance were outside of his duties as cashier, there is no claim of breach of duty in this respect, but the charge is for failure to apply the $5,000 to the payment of the note for that sum. In this matter he would only act as the agent of the bank. If, on the other hand, as the plaintiff says, the defendant "volunteered" to make the arrangement, he was to that extent the plaintiff's agent and not responsible if the bank would not do what the plaintiff wanted. There is no evidence of any consideration running to the defendant to support the contract with him. The only consideration shown is the payment to the bank.

(2)   In either view the plaintiff shows no cause of action against the defendant.   While it may be admitted, as plaintiff claims, that an agent may make himself personally liable, we do not think that this is a controlling question in the case, because the plaintiff ratified and adopted what was done by the defendant by giving the note of April 3rd, 1894, for $3,600. At that time he knew how the money had been applied and knew that the stock was still held by the bank as a pledge, and testified that he supposed the defendant was acting for the bank.   He accepted the benefit of the situation by an extension of time by renewal notes, and he cannot ratify a contract and then sue for its breach.

Before signing the note of April 3rd, 1894, the plaintiff had received a full statement of the application of the $5,000, showing a payment on that note of $1,400—$1,350 from the sale of the estate and $50 paid by him—thus reducing the note to $3,600.   The bank demanded payment, and the new note of $3,600 was given, so far as appears, without objection or claim of breach of contract, all the stock still being left in pledge, and the plaintiff receiving back the note for $5,000, the others having been previously returned to him. For two years afterwards he paid interest on this note, also without objection.   Admitting that the defendant made an unauthorized application of the money, we can hardly conceive of a clearer case of ratification.

The plaintiff says that he was forced by his circumstances to do this and by the threat of the defendant to foreclose a mortgage which he held on personal property of the plaintiff, thus claiming that he acted under a sort of duress, or, at least, of coercion.

In *Dispeau* v. *First Nat'l Bank*, 24 R. I. 508, this court said: "It is neither coercion or duress to threaten or to do what one has a right to do.   Payment of money, even upon a disputed claim, to avoid a pending or threatened suit or sale, when a creditor has an apparent right to sue or sell, does not make the payment voidable."

In that case we also held that repeated payments of interest and the execution of a mortgage on an agreed amount

was a ratification of all previous dealings. The same principle applies in this case. Here, as also in that case, the plaintiff had ample time to bring the disputed matters to adjudication. In 1893, if the plaintiff's stock was free from pledge, he could have sued for it. If he had, quite likely the bank would have sued on the note. Instead of taking this risk the plaintiff accepted extension of time, acquiesced in the pledge of the stock, until he sold it and paid the note from the proceeds.

From anything that appears he might have done this in the first place, and thus avoided the damage which he alleges from the detention of the stock in pledge. The plaintiff claims that the defendant, being secretary of the Reporter Company, refused to sign a transfer of the stock until it was offered to the company, according to the charter.

If the charter so provided, the offer should have been made. *Sweetland* v. *Quidnick Company*, 11 R. I. 328. If there was no such provision the defendant might be liable, but upon a cause of action quite distinct from that in this declaration. The fact, however, would not support a recovery on this declaration.

If, as appears from the evidence, one hundred and fifty shares were pledged on the $5,000 note, and another hundred and fifty shares were pledged on a smaller note which was paid and returned, it could make no difference to the plaintiff which block of shares was released, for he could sell one as well as the other. Whichever way the notes were paid, only one hundred and fifty shares were released from pledge, and the same amount of debt reduced. Under the arrangement, as stated by the plaintiff, he could as well have demanded one block of the stock as the other, both being of the same amount. Instead of demanding either block of stock, and knowing that the bank claimed both as a pledge, he acquiesced in the claim, gave his note accordingly, and paid interest thereon for two years. This conduct is both acquiescence and ratification.

The plaintiff relies upon the finding of the jury that the pledge of three hundred shares of stock was not on the note

for $3,600 when the plaintiff signed it. It is true that the plaintiff first testified in the cross-examination that the three hundred shares were not on the note, but he afterwards testified that he presumed they were pledged; that he signed the note with the full understanding that Mr. Francis held the shares for the bank; that he would not swear whether he meant to pledge the shares or not, and that he would not swear that the words "300 shares Woonsocket Reporter Co." were not on the note when he signed it. This testimony, in connection with the defendant's assertion that the shares were pledged on the note when it was made, shows obviously that this finding was against the evidence.

It is unnecessary to consider the exceptions presented separately, as they are already substantially covered.

As to the remarks of counsel to the jury, it is enough to say that, while in several particulars they were far outside of the case and the line of proper argument, in view of the conclusions of the court further reference to them is needless.

Petition for new trial granted.

*Barney & Lee*, for plaintiff.
*Edwards & Angell*, for defendant.