José Ramón Rodríguez et ux., Plaintiffs and Appellants, *v.* M. Joglar & Co., *S. en C.,* Defendant and Appellee.

No. 6234. Argued January 24, 1934.—Decided March 16, 1934.

*Luis Mendín* for appellants. *A. Rivera Colón* and *L. Toro Cabañas* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the court.

On July 19, 1927, José Ramón Rodríguez and his wife, Simona Rodríguez, confessing that they had already received in cash as a loan the sum of $2,900, constituted a mortgage in favor of the firm of M. Joglar & Co., *S. en C.,* upon a rural property described in the complaint, and which, as is alleged in the complaint, was then owned by them. This property was later sold at public auction to Hamburger Bros. & Co., upon execution of a judgment in favor of that firm and against José Ramón Rodríguez.

The mortgage debtors, plaintiffs in this case, alleged that it was untrue that they received from the defendant, M.

Joglar & Co., *S. en C.*, either in whole or in part, the sum of $2,900 as a loan, and that the plaintiff, José Ramón Rodríguez, consented to execute the deed referred to under duress of the defendant, M. Joglar & Co., *S. en C.*, in that if he did not consent, they would immediately commence suit against the plaintiff's aged father, Francisco J. Rodríguez, and would attach all of his property, impoverishing him, to recover the above-mentioned sum which the said Francisco J. Rodríguez owed to the defendant firm.

It was further alleged that the plaintiff, Simona Rodríguez, gave her consent in the deed referred to by reason of the insistent pleas of her husband, José Ramón Rodríguez; and that upon the part of the defendant firm there was, simultaneously with the execution of the mortgage deed, the promise that they would not require payment of the mortgage credit, which was merely a provisional measure while the account of the aforesaid Francisco J. Rodríguez was liquidated.

The defendant firm denied all of the allegations of the complaint, and set up as a defense that the mortgaged property belonged then entirely to the father of the plaintiff, José Ramón Rodríguez, that is, to Francisco J. Rodríguez, who lived on the property; that Mr. Rodríguez, the father, was indebted to the defendant in the amount of $1,462.99, and that José Ramón Rodríguez was indebted to the defendant in the amount of $350.56; that the aforesaid $2,900, the amount of the mortgage credit, was received by the debtor José Ramón Rodríguez in the following form: $1,462.99 owing by his father, who renounced all his right and title in and to the mortgaged property, in consideration that José Ramón Rodríguez would pay the aforesaid debt and that the defendant would deliver to him also, for account of José Ramón Rodríguez, $730.01, amounting in all to $2,200. The said José Ramón Rodríguez, together with his wife, constituted a mortgage in favor of the defendant to guarantee the pay-

ment of the said $2,200, $350.56 of his current account, and $349.44 which he received in addition in the form of two checks drawn against the Banco Comercial de Puerto 'Rico, all of which aggregates the sum of $2,900, the amount of the mortgage credit.

The complaint having been dismissed on the merits, the plaintiffs took the present appeal, and have assigned as error that the court below found as proved by the preponderance of the evidence that the property mortgaged by the plaintiff and his wife in favor of the defendant belonged to Francisco J. Rodríguez on the date of the mortgage and not to the "mortgagors," and that the mortgage contract was supported by sufficient consideration (*causa*).

Plaintiffs' cause of action is based solely upon duress imposed upon them by the defendant, and upon their having consented under that duress. Even upon the theory that the plaintiffs were the owners of the property and that the court erred in holding that it belonged to the father, the complaint cannot be sustained if it be shown that there was no duress in this case. José Ramón Rodríguez admitted that his father was owing a sum of money to the defendant firm and testified that he executed the deed because his father told him that he was indebted in a considerable amount to Mr. Manuel Joglar, and that the latter had threatened that if he did not guarantee the debt, he would have to levy execution upon some properties which he had and upon a piece of land as well, and that in case the properties should be attached, he would be left penniless. The witness promised to talk to Mr. Joglar, as he did some days later. We copy literally the words of the witness with respect to his conversation with Joglar: ". . . that then he proposed to him that he should sign a mortgage deed, because it was not the witness who was the debtor; that that was to avoid suits and in order that he would not have to attach his father's property. Then the witness answered him that he would have to consult with'

his wife and she was in Morovis; and then Joglar told him to go to Morovis where she was while Joglar went to the notary. That he told his wife that he was going to have to make a mortgage in favor of Manuel Joglar to avoid an attachment of the old man's property, and she said that that might be dangerous; but then he told her that that could not hurt them at all, because it was not a debt they owed but his father's; that then he went back to where Joglar was and told him that they would sign the deed."

The statements of José Ramón Rodríguez tend to show that the mortgage loan was in effect a guaranty to prevent the defendant from collecting the obligation owing by his father by legal action.

Admitting as true, for the purposes of argument, the statements of the plaintiff, which the court below did not believe, we find that the defendant limited himself to stating that if he did not guarantee the debt, he would exercise his right to collect his claim by suit. There is no duress, in our opinion, when a person advises another that he proposes to exercise his legitimate right of resort to the courts if the latter does not pay a demandable obligation. Not only Francisco Rodríguez, who contracted the obligation, but also his son, the plaintiff, knew that the obligation, once due, was subject to collection by legal action.

We agree, as Manresa states in commenting upon section 1267 of the Civil Code of Spain, equivalent to section 1219 of our Civil Code, 1930 ed., "that consent may be wrested from a man under the threat of an injury which would not terrify him, but which might have serious consequences for a weak woman, an aged father, or a defenseless child." This is not the case before us. The elements of duress do not appear from the statements which the plaintiff attributes to the defendant that if he signed the mortgage deed, he would avoid suits and it would not be necessary to levy upon the properties of the father.

In commenting upon the section just cited, Manresa (*Comentarios al Código Civil Español,* vol. 8, p. 595, 4th ed.) says:

"Modern law, whose tendencies the Code follows, has sought, following the influence of the canon law, a wider formula and one more consistent with human weakness, than that which inspired the force of the Roman law upon this point. The determination as to the existence of fear is largely entrusted to the courts and made dependent upon the facts in each case; but the law does not fail to provide rules as to that which we may call the essence and object of duress.

"The first of the requisites is that the fear be reasonable and well founded, which supposes the probability of the threat, its seriousness, the possibility that it may be realized, the availability of means for it upon the part of the person making the threat, according to the circumstances of the case.

"It is essential also that one be menaced with an injury (*mal*), and upon that single word let us stop, without passing on to the adjectives which follow it, because, since the legislature does not understand that as injury which the law itself aids and imposes, we derive therefrom the important conclusion that the injury has to be unjust, and that he does not impose duress who limits himself to invoking his rights, without abusing them. Thus the debtor may not say, where he consents to pay under threat of recourse to the courts and the costs of litigation, that his consent was void, but on the other hand it would be, if the creditor, exceeding his legal rights, should force from the debtor with the same legal threats a novation of contract or the acknowledgment of a greater debt. The case of a contract made under threat of being accused as responsible for a criminal act, is not a difficult one, in our judgment, since although accusation is a licit act and even obligatory at times, a contract not to accuse is immoral and contrary to law, and consequently, he who abused the knowledge which he had of the commission of a crime by another, and was not even able with the contract to free the other from responsibility, may not thereby gain for himself an advantage which he may effectively enforce.

"In a case submitted to the Supreme Court, it was decided that there is no duress in a contract made under threat of accusation for embezzlement committed *by one contracting party against the other*, especially where the contract which was executed represents indemnity to the party prejudiced by the embezzlement; and as a general proposition, our highest court has accepted as its own the

rule laid down in our ancient laws and accepted without contradiction by the cases, that the injury to which section 1267 refers must be unjust, and can in no event be that which is caused by the exercise of a legitimate right (Judgment of February 12, 1915)."

The American cases establish the same rule. The threat to exercise a right does not constitute duress. 13 C. J. 399. In the case of *Pease* v. *Francis,* 55 Atl. 686, 687, the court said:

"The plaintiff says that he was forced by his circumstances to do this, and by the threat of the defendant to foreclose a mortgage which he held on personal property of the plaintiff; thus claiming that he acted under a sort of duress, or at least of coercion. In *Dispeau* v. *First Nat. Bank,* 24 R. I. 570, 53 Atl. 868, this court said: 'It is neither coercion nor duress to threaten or to do what one has a right to do.' "

In the case of *Stout* v. *Judd,* 63 Pac. 662, the Court of Appeals of Kansas said:

"It is further contended that the court erred in its instructions to the jury. The contention here is that the court erred in instructing the jury that there was no evidence offered by defendants sufficient to present to the consideration of the jury the question of failure of consideration and duress in the execution of the note. We think the court properly instructed the jury upon this question. The only evidence offered in support of this phase of the case was that of the defendants, who testified that the only duress was the threat of plaintiff to institute foreclosure proceedings in the event that defendants failed to renew their past-due paper. This does not constitute fraud or duress in law, and the question was properly taken from the consideration of the jury."

In the present case Francisco J. Rodríguez, father of the plaintiff, testified that the defendant firm had not committed any act of coercion against him and that he was not threatened with suit on the obligation which he had contracted with that firm. The lower court stated that this witness testified in a clear, definite, truthful, and convincing manner, and it moreover made the finding that the property, when it was mortgaged, belonged to the father and not to the son. It is not

necessary to decide whether the court was correct or not in reaching this conclusion. It is sufficient for us to know that in this case there was no duress; that José Ramón Rodríguez and his wife mortgaged the real property described in the complaint in favor of the defendant knowing that his father had contracted a debt with that firm; and that even if we accept as true the allegations of the complaint and the testimony of José Ramón Rodríguez, the contract between the defendant and the plaintiffs was nothing more than a means of guaranteeing the debt owing by Francisco J. Rodríguez.

It is urged finally that the court erred in awarding costs against the plaintiffs. We dismiss this error, believing that the court wisely exercised its discretion in imposing costs on the losing party.

The judgment appealed from must be affirmed.