NATIONAL PRISONERS REFORM ASSOCIATION

v.

John SHARKEY.

Civ. A. No. 4884.

United States District Court, D. Rhode Island.

April 28, 1972.

Opinion on Motion for Preliminary Injunction May 9, 1972.

John Roney, R. I. Legal Services, Ralph Gonnella, Providence, R. I., Max Stern, Mass. Law Reform Institute, Boston, Mass., for plaintiffs.

W. Slater Allen, Jr., Asst. Atty. Gen., for State of Rhode Island, Providence, R. I., for defendants.

## OPINION

PETTINE, Chief Judge.

Plaintiff, the National Prisoners Reform Association, on behalf of itself and its members, seeks a temporary restraining order from this Court. It seeks to restrain defendant, John Sharkey, who is Assistant Director for Corrections of the Rhode Island Department of Social and Rehabilitative Services. from

"A. Banning, preventing, interfering or otherwise impeding, except by reasonable pre-existing regulation, meetings by members of the Association within the prison, at times and places approved by the defendant, for the purpose of planning prospective programs, discussing and directing the course of this action and any action filed against the corporate charter of the plaintiff.

B. From barring the outside members or the plaintiff Association, namely, Charles Fortes, Larry A. Schwartz, Wendy Sloan, Kathryn Duncle, Jane Fales, and Carol Kelly, from the Adult Correctional Institutions and from restricting them access thereto except by reasonable pre-existing regulations which are applied to all prison visitors."

The restraining order is sought pending hearing on preliminary injunction.

In light of the public interest involved in this law suit, this Court did not wish to enter an *ex parte* restraining order and required defendant to show cause why a restraining order should not issue. An evidentiary hearing having been held, the Court finds the following facts.

On April 5, 1972, the first formal meeting of the plaintiff organization was held. It was held at the Adult Correctional Institution, and was attended by 12 to 14 people, including six or more inmates, Warden Francis Howard, Larry Schwartz, and Carol Kelly. Warden Howard and others testified, and I so find, that at this April 5 meeting the goals of the organization, proposed by-laws and a proposed constitution were discussed. The goals of the organization, as defined by its members, are to improve prison conditions and to make people outside of the prison aware of conditions within. Specific goals may be to apply for a federal grant, to give prisoners a voice in the construction of any new penal institutions in Rhode Island, to beautify wings of the prison, to contact people outside the prison to provide jobs for released inmates, and to obtain funds to provide more money on release to inmates sent back into the community outside. The organization resulted from a series of informal meetings held in March 1972 at the A.C.I. and was incorporated. It seeks its membership from both inside and outside of the prison walls and anticipates having membership by ex-convicts. It is a dues paying organization.

Warden Howard gave permission for the group to meet again on April 13, 1972. This meeting was not held because defendant Sharkey ordered that the group was not allowed to meet. Witness Palmigiano, an inmate and president of the plaintiff organization, testified that he then asked to speak to the press and was told the press was not allowed to see them. At the time he left the April 5, 1972 meeting, Warden Howard did not consider the group to be an immediate threat to the security of the institution. At the time he testified, Warden Howard had made no decision "up or down" about the plaintiff organization.

Defendant Sharkey is Warden Howard's superior.

The Warden and others testified, and I so find, that there are organizations of inmates permitted at the A.C.I., including the Afro-American Society, the Jay-Cees, the Lifer's Association, the Challenge, the Inmate Advisory Board, and others. Like the plaintiff organization, the Inmate Advisory Board is incorporated. These several organizations are generally permitted to meet regularly, to announce meetings, to use meeting rooms, and to use the mimeograph machine. Persons from outside the prison are allowed to attend meetings of some of these organizations and some of these organizations are allowed to collect dues. The Jay-Cees is a group whose purpose is to better prison conditions and it is allowed outside members. It sponsors a legislative forum in which other prison organizations are invited to participate. These organizations are not, in the opinion of the Warden threats to the security of the A.C.I. There are no written A.C.I. rules or regulations about inmate organizations and access to them by the outside visitor, but there are unwritten regulations and policies.

The only thing which seems to be unique to the plaintiff organization out of all of these groups is its interracial character. In the testimony of witness Palmigiano, this is the first group at

the A.C.I. to have black and white members working together. The present members of plaintiff National Prisoners Reform Association includes the president and vice-president of the Afro-American Society, the editor and assistant editor of the Challenge, and the president and vice-president of the Jay-Cees. Thus it appears to be an interracial centralized organization interested in improving prison conditions. The plaintiff organization has engaged in no activities other than holding non-disruptive meetings. In the opinion of its president, if the organization is not allowed to meet it is in danger of disbanding due to loss of interest and loss of momentum. The mere fact that mixed racial membership has managed to meet has reduced racial tension, in his opinion, and this effect would be lost.

I note that the membership of the organization drawn from outside the prison includes several young women, members of the Rhode Island Junior League.

The Warden testified that it is the policy of the A.C.I. not to allow visits by ex-convicts. In his opinion, it is necessary for the institution to have ultimate control of visitors, both receiving notice and giving consent for visits in his best judgment. Defendant Sharkey testified that although Warden Howard knew of plaintiff organization, neither he nor the Director of the Department of Social and Rehabilitative Services knew of the establishment of this organization prior to April 12, 1972. He testified that inmate organizations cause supervisory problems in that correctional officers must be assigned to attend meetings rather than other duty posts, that the financial records of the organizations must be supervised, that it additionally burdens mail personnel, and it increases evening work and overtime pay.

*Conclusions of Law*

     In order to prevail in its motion for temporary restraining order, plaintiff must show (1) immediate and irreparable injury, (2) probability of success on the merits, and (3) that the harm to movant outweighs the harm to the opposing party and to the public. North Smithfield Drive-In Theatre v. Town Council of North Smithfield, C.A. 4787 (D.R.I. Nov. 30, 1971).

*Irreparable Injury*

     Deprivation of the First Amendment rights of the members of plaintiff organization is in and of itself irreparable injury. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L. Ed.2d 22 (1965); Unemployed Workers Union v. Hackett, 332 F.Supp. 1372 (D. R.I.1971). Were this not enough, plaintiff suffers the danger that it will not be able to survive the duration of defendant's ban on its meetings, surely an irreparable existential injury; or that its attempts at racial harmony will not survive the ban, perhaps an injury fatal to its *raison d'etre*. Thus the danger is raised of a threat to this Court's continuing jurisdiction of this matter in that any relief which may be afforded later may be meaningless. I find sufficient injury to support issuance of a restraining order.

*Probability of Success*

     Recognizing that the freedom to exercise First Amendment rights may be less absolute behind prison walls than on the outside, I also recognize the proposition that

> "A prisoner retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law."

Coffin v. Reichard, 143 F.2d 443 (6th Cir. 1944), cert. denied 325 U.S. 887, 65 S.Ct. 1568, 89 L.Ed. 2001 (1945).

     The asserted violations of constitutional rights by defendant are here manifold. Violated are the rights of the members to associate and the rights of the association and its members to equal protection of the laws, according to plaintiff's allegations. To this may be added further First Amendment considerations, including the right to associate and engage counsel for vindication of member's rights, see NAACP v. Button,

371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), and the correlative right to meet with counsel. Nolan v. Scafati, 430 F.2d 548 (1st Cir. 1970). There is also the right to associate for more effective utilization of the right to petition for redress of grievances, see Unemployed Workers Union v. Hackett, 332 F.Supp. 1372 (D.R.I.1971). And, finally the right of the inmates to speak and of the public to hear:

> [W]e rely primarily on the fact that the condition of our prisons is an important matter of public policy as to which prisoners are, with their wardens, peculiarly interested and peculiarly knowledgeable. The argument that the prisoner has the right to communicate his grievances to the press and, through the press, to the public is thus buttressed by the invisibility of prisons to the press and the public: the prisoners' right to speak is enhanced by the right of the public to hear."

Nolan v. Fitzpatrick, 451 F.2d 545 (1st Cir. 1971).

There is a high probability that, on the merits, it will be found that there is a First Amendment right to associate as and for the reasons that plaintiff has organized. Assuming, then, that the proper standard of review will be that enunciated in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), and adopted by this Circuit in Nolan v. Fitzpatrick, *supra,* the state's burden is to establish that its regulation of plaintiff here "furthers an important or substantial governmental interest" and that "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377, 88 S.Ct. at 1679. It is here that plaintiff finds its probability of success, for defendant has not come near to presenting that minimum quantum of evidence needed to demonstrate the presence of an important governmental interest.

I accept that there is a need to control both visitors to the A.C.I. and inmate organizations. However, plaintiff here seeks limited relief, which by its own terms is subject to pre-existing prison regulations. By his conduct in allowing other groups to meet at the A.C.I., defendant has defined the parameters of the state's interest in maintaining the security and efficient running of the institution. Defendant has felt, obviously that the state's interest is not infringed by allowing the Jay-Cees to meet, collect dues, and have outside members. Strain though I may, I do not see that the state's interest is different or greater in regulating plaintiff so severely as not even to allow the temporary relief requested.

Thus, without defining the permissible limits of regulation of prison associations under the First Amendment, I find that, using defendant's regulation of other groups as a yardstick, defendant has failed to show any infringement of a governmental interest. On the basis of the ruling of the United States Supreme Court in Shapiro v. Thompson, 394 U.S. 618 at 633, 89 S.Ct. 1322, 22 L. Ed.2d 600, I have much doubt whether defendant's claim of fiscal burden has any effect here. Further, I cannot accept defendant's argument that this plaintiff organization is objectionable because it was formed without his knowledge. It met with the knowledge of the Warden, and, in his opinion, was not an immediate threat to the institution. That being so, defendant certainly lacks censorship power over the constitutionally legitimate goals of the organization. See *Unemployed Workers, supra.*

There has been no showing of any threat of violence or breach of security at the prison. Nor has there been any showing that the interests of restraint, retribution, deterrence, or rehabilitation will suffer if this order issues. *A fortiori* there has been no showing that this broad ban is necessary to achieve any state interests or that a narrower re-

striction will not do. Plaintiff has met the standard for probability of success.

*Balance of Hardships*

On the facts of this case, the issue of balance of the hardships is integrally interwoven into the First Amendment claim. On balance, the restraining order should issue. In the public interest, the restraining order should issue.

For the above reasons defendant, his agents and assigns are temporarily restrained from the following:

A. Banning, preventing, interfering or otherwise impeding, except by reasonable pre-existing regulation, meetings by members of the Association within the prison, at times and places approved by the defendant, for the purpose of planning prospective programs, discussing and directing the course of this action and any action filed against the corporate charter of the plaintiff. By reasonable pre-existing regulation is meant those policies and rules pursuant to which the other A.C.I. organizations mentioned herein are and have been regulated.

B. From barring the outside members or the plaintiff Association, namely, Charles Fortes, Larry A. Schwartz, Wendy Sloan, Kathryn Duncle, Jane Fales, and Carol Kelly, from the Adult Correctional Institutions and from restricting them access thereto except by reasonable pre-existing regulations which are applied to all prison visitors.

### Opinion on Motion for Preliminary Injunction

This is a motion for preliminary injunction seeking the same relief as was granted by this Court in its opinion on temporary restraining order dated April 28, 1972. A further evidentiary hearing was held on preliminary injunction on May 8, 1972. On motion of plaintiff this Court adopted certain additions to its findings of fact contained in the April 28, 1972 order. Incorporating the findings of fact and additions attached hereto, conclusions of law and the order of the April 28, 1972 opinion on tempo-

rary restraining order, this Court rules that the motion for preliminary injunction be and hereby is granted.

On the basis of the May 8, 1972 hearing, this Court further finds that plaintiff's first request subsequent to the granting of the restraining order to hold a meeting was denied because one week's prior notice was not given. A meeting of the National Prisoners Reform Association was held May 5, 1972. The meeting itself was not disruptive, nor were there any disruptions subsequent to it. Conduct of this law suit, the group's bylaws and constitution, and the interracial nature of the group were discussed at that meeting. No supervisory personnel from the A.C.I. were present, and, in the testimony of one of defendant's witnesses, Assistant Warden Houle, the current policy of the A.C.I. is not to have supervisory personnel at inmate organization meetings.

An accountant employed at the A.C.I. testified, and I find, that in general the existing inmate organizations create some hardship in that the A.C.I. lacks enough fiscally trained personnel to accomplish the work. She also testified, and I find, that there has been no request from the plaintiff organization to keep its accounts. Deputy Remillard testified, and I find, that there have been no inmate complaints about the plaintiff organization. Assistant Warden Houle testified, and I so find, that the addition of this new organization does not have a significant effect on the security workload.

Further conclusions of law are as follows. The testimony given by defendant's own witnesses at the hearing on preliminary injunction establishes that there is no important state interest being furthered by banning this organization. The existence of this organization does not constitute a threat to the security of the institution, or even substantially add to its security workload. There is no significant administrative burden since supervisory personnel do not attend meetings and the A.C.I. accountants have not been asked to keep

the National Prisoners Reform Association's books. Nor has the organization occasioned complaints from other inmates.

■ Prisons do not exist outside of the law. They are institutions created by law and prison officials are subject to law. The discretion vested in these officials is always subject to the limits imposed by the Constitution. As to the justifications offered by defendant in this case,

"Humane considerations and constitutional requirements are not, in this day, to be measured or limited by dollar considerations."

Jackson v. Bishop, 404 F.2d 571, 580 (8th Cir. 1968) (Blackman, J.), quoted in Rozecki v. Gaughan, 459 F.2d 6 (1st Cir. 1972).

## ADDITIONS TO FINDINGS OF FACT

1. From the unrebutted testimony of plaintiff's witnesses, I find that Larry A. Schwartz is employed by the Providence Corporation, a private, non-profit, anti-poverty organization with offices in Providence, Rhode Island; that he has served on various public service boards and committees related particularly to child-care and vocational training; and that he is presently the Chairman of the Subcommittee on Corrections of the Cooperative Area Manpower System—a Governor-appointed committee which oversees various job-training programs throughout the state, two of which are located at the Adult Correctional Institutions (hereinafter referred to as the "ACI").

2. That Mr. Schwartz has been admitted on numerous occasions prior to the formation of the plaintiff organization to the various state institutions operated by the Department of Social and Rehabilitative Services, including the ACI, the Boys' Training School, and the Children's Center.

3. That Carol Kelly, Wendy Sloan, Jane Fales and Katherine Dunkle are members of the Rhode Island Junior League who have volunteered to work with Mr. Schwartz at the Adult Correctional Institutions.

4. That Mr. Schwartz and Ms. Kelly and Sloan were admitted to the ACI on March 22nd, March 29th and April 5, 1972, and Ms. Fales and Dunkle were admitted on March 29th and April 5, 1972, each with the knowledge and permission of Warden Howard and that on each of those occasions they met with Nicholas Palmigiano and other inmates interested in the plaintiff organization.

5. On April 13, 1972, prior to the scheduled meeting, Larry Schwartz and Ralph Gonnella of the Inmate Legal Assistance Program, were summoned to the office of defendant Sharkey, who informed them that he would not recognize the plaintiff association, that its members would not be allowed to meet, that the scheduled meeting was cancelled, and that members of the association could not use ACI facilities for meetings or any other purpose, and that he intended to take immediate legal action to dissolve the association.

6. Mr. Sharkey informed Mr. Schwartz that he was henceforth "persona non grata" at the ACI, that he was barred from the prison for all purposes except to visit juveniles in Annex C, and that the other outside members of the association were barred from entering the prison for the purpose of meeting with inmate members of the association.

7. That subsequent to April 13, 1972, Larry A. Schwartz, attempted to have this bar lifted on several occasions in telephone conversations with Warden Howard, defendant Sharkey, and the Director of the Department of Social and Rehabilitative Services, John J. Affleck, and that these attempts were unsuccessful.