Theodore di STEFANO, Plaintiff,

v.

UNITED STATES of America, DEPARTMENT OF the TREASURY OFFICE OF THRIFT SUPERVISION, Defendant.

Civ. A. No. 91–0664L.

United States District Court,
D. Rhode Island.

March 30, 1992.

Harvey A. Levin, Douglas A. Anderson, U.S. Dept. of Treasury, Office of Thrift Supervision, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

### I.  INTRODUCTION AND FACTS

Plaintiff Theodore di Stefano has moved for a preliminary injunction to prevent the Treasury Department's Office of Thrift Supervision ("OTS") from enforcing a Temporary Cease and Desist Order ("OTS Temporary Order") issued on October 31, 1991, pursuant to a provision of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1818 (1988 & Supp. I 1989).

Plaintiff is the former president and chairman of the board of directors of Colonial Savings Bank ("Colonial"), a federally insured savings and loan association in Rhode Island.  Suspecting instability, OTS examined the banking practices at Colonial and concluded that, among other irregularities, Colonial's method of compensating plaintiff was improper.

In January 1991, after lengthy negotiations, OTS and Colonial's board of directors entered into a Stipulation and Consent to Issuance of Order to Cease and Desist ("Stipulation"), in which the directors agreed to comply with the terms of an Order to Cease and Desist ("OTS Order"). All directors, including plaintiff, signed the Stipulation. The OTS Order became effective on January 30, 1991. The OTS Order placed strict limits on compensation of Colonial's employees and specifically directed plaintiff to return to Colonial his 1990 bonus income, which totaled $24,750.  OTS Order, para. VIII(B).

OTS closed Colonial on May 10, 1991.  To date, plaintiff has not returned the $24,750.

On October 31, 1991, OTS initiated administrative proceedings against plaintiff before the Office of Financial Institution Adjudication, seeking the payment of the $24,750 and an additional penalty of the same amount.  The OTS served plaintiff

Phillip W. Noel, Providence, R.I., for plaintiff.

with notice of the charges[1] and simultaneously issued the OTS Temporary Order, which is the focus of this motion. The OTS Temporary Order, issued pursuant to 12 U.S.C. § 1818(c)(1), ordered plaintiff to provide security in the amount of $24,750 within eleven days, to give OTS certain personal financial information, and to refrain from transferring certain personal assets. The OTS intended thereby to prevent the dissipation or concealment of the disputed $24,750 during the administrative proceedings.

Plaintiff brought this suit in December 1991, pursuant to 12 U.S.C. § 1818(c)(2), to enjoin enforcement of the OTS Temporary Order. On January 3, 1992, this Court issued a temporary restraining order enjoining enforcement of the OTS Temporary Order until the Court could examine the situation more closely in the context of this motion for a preliminary injunction. For the reasons that follow, plaintiff's motion for a preliminary injunction is denied, and this Court's previously issued temporary restraining order is vacated.

## II. DISCUSSION

### A. STANDARD FOR GRANTING INJUNCTION

FIRREA sets the standard for granting or denying this injunction. Within 12 U.S.C. § 1818, subsection (c)(2) gives the district courts explicit, albeit limited, authority to enjoin temporary cease and desist orders issued by OTS in connection with administrative actions under subsections (b) and (c)(1). This Court will not determine the ultimate merits of plaintiff's claims and defenses; that task is entrusted solely to the administrative process. 12 U.S.C. § 1818(i)(1) (1988); *Board of Governors v. MCorp. Fin., Inc.,* —— U.S. ——, 112 S.Ct. 459, 466, 116 L.Ed.2d 358 (1991). Because the statute authorizes this partic-

ipation by the federal courts in the administrative process, however, the courts' usual reluctance to interfere with the administrative process would be inappropriate.

■ In a suit for an injunction under subsection (c)(2), the district court applies the traditional tests for granting preliminary relief from an administrative agency action.[2] The statute does not suggest that courts should deviate from the traditional requirements for granting preliminary relief from administrative actions, and the statute's legislative history affirms that these traditional tests should govern. *Mid Am. Bancorp. v. Board of Governors,* 523 F.Supp. 568, 578 (D.Minn.1980).

■ In the First Circuit, a plaintiff seeking a preliminary injunction must normally demonstrate: (1) a likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) that such injury outweighs any harm that the injunction, if granted, would inflict on defendant; and (4) that granting the injunction will not adversely affect the public interest. *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991); *Lancor v. Lebanon Hous. Auth.,* 760 F.2d 361, 362 (1st Cir.1985). Additionally, a party seeking an injunction against an administrative agency action must prove a *"substantial* likelihood" (instead of a mere likelihood) of success on the merits. *Mid Am. Bancorp.,* 523 F.Supp. at 578 (emphasis added); *Pauls v. Secretary of Air Force,* 457 F.2d 294, 298 (1st Cir.1972); *Quaker Action Group v. Hickel,* 421 F.2d 1111, 1116 (D.C.Cir.1969). All these conditions must be satisfied, but the likelihood-of-success component is the most important. *Lancor,* 760 F.2d at 362.

■ Plaintiff initially seeks to shift to defendant the burden of proving the four requisites to an injunction. He argues that

---

1. The document was entitled "Notice of Charges and Hearing for an Order to Cease and Desist and to Direct Restitution and Other Appropriate Relief; Notice of Intention to Prohibit; and Notice of Assessment of Civil Money Penalty."

2. The statute provides a more lenient standard for granting injunctions requested by the Feder-

al Depository Insurance Corporation, the OTS, or the Comptroller of the Currency, when acting as conservator or receiver for an insured institution. 18 U.S.C.A. §§ 1821(d)(18)–(19) (West Supp.1991); *see also Parker v. Ryan,* 760 F.Supp. 1189, 1191 n. 2 (N.D.Miss.1991).

the OTS Temporary Order is essentially a "temporary injunction," that plaintiff's current motion is functionally a request for relief from defendant's "injunction," and that, therefore, defendant should bear the burden of justifying its "injunction" by demonstrating the four conditions in its favor.

Plaintiff can cite no authority to support his unorthodox position because it is not based on the law. The OTS Order and OTS Temporary Order are authorized by federal statute. 12 U.S.C. §§ 1818(b) & 1818(c)(1) (1988 & Supp. I 1989). Plaintiff, not defendant, has moved for a preliminary injunction under Rule 65. Plaintiff is asking the Court to take the drastic step of enjoining an OTS order and interfering with ongoing administrative proceedings, and he must be the one to justify any such action. Accordingly, whether this Court will grant the preliminary injunction will depend, as always, on whether the *movant* has demonstrated the four preconditions.

## B. ANALYSIS

### 1. *Substantial Likelihood of Success on the Merits*

In issuing the OTS Temporary Order, OTS acted consistently with federal law. The OTS has clear statutory authority to order bank officers and former officers "to take affirmative action to correct the conditions resulting from" any violations of "a law, rule, or regulation, or ... any written agreement entered into" between plaintiff and the OTS. *Id.* § 1818(b)(1) (1988). The OTS also has authority to order affirmative corrections when it identifies an "unsafe or unsound" banking practice at an insured institution, such as self-dealing among directors. *Id.; Hoffman v. Federal Deposit Ins. Corp.*, 912 F.2d 1172, 1174–75 (9th Cir.1990). This includes the authority to require plaintiff, pursuant to a written consent agreement or appropriate administrative procedure, to return the disputed $24,-750 or to post security against its loss. 12 U.S.C. §§ 1818(b)(1), 1818(b)(6), & 1818(c)(1) (1988 & Supp. I 1989); *Hoffman*, 912 F.2d at 1174–75.

■ Plaintiff's various arguments against the legality of the OTS Temporary Order are unpersuasive. First, he argues incorrectly that OTS could not legally order restitution for payments made before the most recent amendments to FIRREA took effect on November 29, 1990. The operative substantive provisions, 12 U.S.C. §§ 1818(b)(6) and 1818(c)(1), became effective in 1989 and 1978, respectively. The Ninth Circuit explained in *Hoffman*, which interpreted FIRREA before the 1990 amendments, that the OTS had statutory authority in 1989 to order restitution from officers and directors of insured institutions. *Hoffman*, 912 F.2d at 1174. Since OTS is only demanding repayment of money that was received in 1990—after the 1989 FIRREA amendments took effect— the OTS Order and the subsequent OTS Temporary Order do not amount to an improper retroactive application of a new substantive law, as plaintiff contends. *See Paul v. Office of Thrift Supervision*, 763 F.Supp. 568, 573 (S.D.Fla.1990).

■ In addition, plaintiff argues that the OTS Temporary Order, which seeks to enforce the Stipulation, is improper because the Stipulation is unenforceable. In the administrative action, plaintiff has raised duress and failure of consideration as defenses to enforcement of the Stipulation. But except for plaintiff's affidavit asserting that OTS convinced him that he had no alternative to signing the Stipulation (Plaintiff's Exhibit C), no evidence supporting the defense of duress has come before this Court. This is insufficient to justify an injunction. An agreement to pay money on a disputed claim in order to avoid a threatened suit, sale, or foreclosure, when the threatening party has an apparent right to take such action, is not voidable under the duress doctrine. *Pease v. Francis*, 25 R.I. 226, 229, 55 A. 686 (1903); *see generally* E. Farnsworth, *Contracts* §§ 4.16–4.19 (1982) (explaining the common law elements of duress). OTS's threats to seize Colonial unless the directors agreed to the Stipulation were not improper. 12 U.S.C. § 1818

(1988 & Supp. I 1989). The duress defense thus seems very unlikely to succeed.[3]

■ Similarly, plaintiff's defense of lack of consideration appears unlikely to succeed. On its face, the Stipulation recites the consideration promised to Colonial and its directors. As consideration for their consent to the OTS Order, the directors avoided additional administrative hearings and litigation, which might lead to additional penalties. Stipulation, para. 1. If plaintiff has other grounds for asserting a lack of consideration for his personal obligations, this Court has not heard them or seen evidence supporting them.

In short, this Court has no reason to conclude that plaintiff is likely to succeed with these defenses. As movant for the preliminary injunction, plaintiff has the burden of demonstrating that he is substantially likely to succeed at the administrative proceedings. The scanty arguments and proof he has submitted provide no basis for this Court to conclude that he is either likely or substantially likely to succeed on the merits.

## 2. *Irreparable Injury*

■ Plaintiff also will suffer no irreparable harm without the injunction. Generally, a temporary loss of money does not constitute an irreparable injury for the purpose of granting or denying a preliminary injunction. *Sampson v. Murray*, 415 U.S. 61, 90–92, 94 S.Ct. 937, 952–54, 39 L.Ed.2d 166 (1974). If adequate compensation is available later, then an adequate remedy exists at law, and the injunction should not be granted. *Id.; Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). In this case, plaintiff's momentary loss of access to $24,750 and other assets does not, in itself, amount to an irreparable injury. Similarly, the expense of preparing the requested financial statements constitutes no irreparable injury.

■ But when the government seizes a citizen's property before affording him a hearing at which to challenge the seizure, the citizen may suffer a deprivation of property without due process of law. Due process normally requires a hearing before the government may deprive a person of his or her property. *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). An ongoing violation of plaintiff's constitutional rights could constitute an irreparable injury. *See Pollgreen v. Morris*, 496 F.Supp. 1042, 1056 (S.D.Fla.1980) (violation of constitutionally-protected property right is irreparable injury); *National Prisoners Reform Ass'n v. Sharkey*, 347 F.Supp. 1234, 1237 (D.R.I. 1972) (deprivation of first amendment rights constitutes irreparable harm). Thus, the Court must determine whether the OTS Temporary Order violates plaintiff's due process rights and, if so, whether such a violation constitutes irreparable injury.

The Ninth Circuit Court of Appeals recently addressed these questions in a similar case, *Spiegel v. Ryan*, 946 F.2d 1435 (9th Cir.1991). Pursuant to 12 U.S.C. § 1818(c)(1), the OTS had issued a temporary order to cease and desist, requiring the former chairman of a failing savings and loan association to return 21 million dollars of allegedly misappropriated assets. The OTS asked for a cash payment, the establishment of an escrow account, or the posting of a bond or letter of credit. The former chairman filed a complaint in federal district court under 12 U.S.C. § 1818(c)(2), seeking injunctive relief from the OTS's order. The OTS responded by moving for its own preliminary injunction enforcing the temporary order. The district court denied the OTS's motion for an injunction and instead enjoined the OTS from enforcing its order. *Id.* at 1437.

The Ninth Circuit reversed, holding that a temporary restitution order, issued pursuant to 12 U.S.C. § 1818(c)(1), does not deprive the former bank officer of due process. *Id.* The Circuit Court first noted that section 1818(c)(1) gives the OTS explicit statutory authority to make a temporary order of restitution. *Id.* at 1438–39. Next,

---

**3.** This Court is not deciding the merits of the plaintiff's defenses; the Court is only assessing their *probability* of success, based on an incomplete record. This ruling, of course, should have no collateral estoppel effect in other proceedings.

the Circuit Court concluded that the temporary order did not amount to an improper deprivation of property, because the contemplated seizure was one of the "few limited situations" in which the Supreme Court allows outright seizure without an opportunity for a prior hearing. *Id.* at 1439 (citing *Fuentes,* 407 U.S. at 90–91, 92 S.Ct. at 1999–2000).

■■■ To justify the extraordinary measure of deprivation prior to a hearing, three conditions must exist: (a) the seizure must be directly necessary to securing an important government or public interest; (b) the person responsible for initiating the seizure must be a government official responsible for determining, under the standards of a narrowly-drawn statute, that seizure is necessary and justifiable in the particular instance; and (c) there must be a special need for very prompt action. *Fuentes,* 407 U.S. at 91, 92 S.Ct. at 2000; *see also Federal Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 240, 108 S.Ct. 1780, 1787–88, 100 L.Ed.2d 265 (1988). In *Spiegel,* 946 F.2d at 1441, the Ninth Circuit concluded that the OTS's temporary order satisfied all three tests.

This Court finds that the three prongs of the *Fuentes* test are also satisfied in this case. The Court agrees with the Ninth Circuit's statement that maintaining the integrity of savings and loan institutions and protecting the public fisc are important government interests. *Spiegel,* 946 F.2d at 1440. This Court also agrees that FIRREA satisfies the requirement that the seizure be ordered by a government official responsible for determining, under the standards of a narrowly-drawn statute, that seizure is necessary and justifiable in the particular instance. *Id.* Finally, this Court follows the Ninth Circuit in finding that the OTS's order to post security is justified by a "special need for very prompt action." *Id.* (citing *Fuentes,* 407 U.S. at 91, 92 S.Ct. at 2000). In enacting 12 U.S.C. § 1818, Congress addressed a need for prompt action against officers and directors suspected of misconduct, before disputed assets become unrecoverable or the institutions become insolvent. The same need for prompt action also exists in this case. The disputed amount may be small in comparison to Colonial's other troubles, but the risk that the money may become unrecoverable is significant enough to justify OTS's prompt action.

### 3. *Balancing of Hardships*

If the Court were to issue the injunction, the hardship to the government would be relatively small. Should administrative proceedings determine that plaintiff is liable, the danger that OTS might never recover the $24,750 is a minor portion of Colonial's problems. But, by the same token, the hardship to this plaintiff of not securing the injunction—thus requiring him to pay or post security in the amount of $24,750—will probably not be great. Plaintiff reports income of $168,860 in 1988, $194,650 in 1989, and $118,894 in 1990. Complaint Exhibit A. The balance of hardships favors neither position.

### 4. *The Public Interest*

Granting the injunction would risk impairing Colonial's assets, which would not serve the public interest. By allowing the OTS to require plaintiff to post security, a denial of the injunction clearly serves the public interest. Plaintiff's payment of security ensures that the taxpaying public will not have to indemnify Colonial against plaintiff's possible inability to repay the disputed bonus if plaintiff is unsuccessful in the administrative proceedings. *See Spiegel,* 946 F.2d at 1440.

In short, plaintiff does not meet the standards necessary for the granting of a preliminary injunction.

### III. *CONCLUSION AND ORDER*

■■■ Accordingly, plaintiff's motion for a preliminary injunction is hereby denied. The temporary restraining order, issued on January 2, 1992, is hereby vacated.

It is so ordered.